## HATCH *v.* HART.

Where, in a lease of real estate, there is a reservation of a portion of the crops to be raised upon the land, the general property and right to them remain in the landlord, the tenant acquiring neither the ownership nor the right to sell the same; but while the tenant retains possession of them under the lease, he has such an interest as makes him a tenant in common, and must join with the landlord in an action for an injury to them.

If, however, the tenant abandon the possession of the crops under the lease,

or if he assent to a sale of his interest therein, and relinquish further claim thereto, the landlord may alone maintain trespass for an injury to the crops thus abandoned or sold with the assent of the tenant.

The admission of immaterial evidence is no cause for setting aside a verdict.

TRESPASS, brought by Ansel Hatch against Jesse Hart, for taking and carrying away two tons of hay, March 23, 1858. The defendant pleaded in abatement the non-joinder of one Miner, as plaintiff, alleging that the plaintiff, neither at the time of the alleged trespass, nor at any time since, had or has any thing in the hay, or any part thereof, but in common and undivided with said Miner, who is alive, &c. Upon this plea issue was joined, and a verdict returned for the plaintiff.

It was agreed that the following lease, not under seal, was signed and executed by the plaintiff and Miner.

" AGREEMENT BETWEEN ANSEL HATCH AND CHARLES MINER.

Thornton, April 6, 1857.

" Be it remembered that the said Hatch has let his farm in Thornton, which he now lives on, to the said Miner for one year. *Conditions* : The said Miner is to pay one half the taxes, also find half the seed for planting and sowing, do all the work in a good, husbandlike manner, and in good season. The fodder is to be used on the farm for the benefit of said farm ; the said Miner is to have one half of all crops that grow on said farm the ensuing year; also to deliver to the said Hatch one half of all the crops of corn, rye, oats, wheat, peas, beans, potatoes, and all other measurable crops, except the fodder, which he is to feed out in a good, prudent manner. The said Miner is to occupy three rooms in the house, the kitchen and two bed-rooms, one half the chambers, and as much of the cellar as he needs to secure his meat and vegetables. The said Miner is to have half the wool, and half the lambs, and half the calves, half the butter

that is made from the cows, the other half to be put down in good condition for the said Hatch; the oxen, cows, calves and sheep are to be kept out by the said Miner until spring work is done, on the common stock of fodder that is raised this season by the said Miner. The said Hatch reserves to himself the garden and one third of an acre of tillage land."

It appeared in evidence that Miner entered and carried on the plaintiff's farm, under said lease, until the last of December, 1857; that the plaintiff's stock remained on the farm; that Miner had no stock to put on the farm, and carried none there. The plaintiff's evidence tended to prove that Miner left the farm the last of December, 1857, and abandoned his rights under the lease, but it was not made a question by the plaintiff whether Miner lost his rights under the lease by abandonment.

It appeared in evidence that on the second day of October, 1857, one Smith sued out a writ of attachment against Miner, and that the officer's return upon said writ was as follows:

"Grafton ss., October 5, 1857.

"I then attached, as the property of the within named Charles Miner, one undivided half of all the hay" * * "situate in the barn now occupied by the said Charles Miner, in Thornton," &c.

"Grafton ss., October 31, 1857.

"The said Smith, creditor, and Miner, debtor, having consented and agreed that the goods attached in the above action should be sold at public auction, and the proceeds retained to satisfy the judgment that may be rendered in said suit, I advertised the said goods for sale on Thursday, the fifth day of November, 1857, at," &c., "and on the said fifth day of November I sold the same goods, at the time and place above mentioned, at public auction, to the highest bidder, for the prices set forth in the schedule

hereto annexed, in whole amounting to $30.50, from which sum I have deducted the amount paid on a mortgage to which said goods were subject at the time of attachment, and my fees and charges of sale, being $15, and hold the net proceeds, being $15.50, in my hands, to satisfy any execution that may issue in said suit. Charges of sale: advertising, $2.00; selling, $2.00. The property on the schedule annexed was subject to a mortgage to John Barnard. On the 15th day of October, 1857, I demanded of the said John Barnard an account, under oath, of the amount due on the debt or demand secured by said mortgage, and on the same day he disclosed that there was $11 due, which sum I have paid him, and deducted the same sum out of the proceeds of the sale."

"Schedule of goods attached on the annexed writ, with the names of the purchasers, and the prices for which they were sold: Three tons of hay to John Barnard at $7 per ton, $21.00; ½ ton of hay to John Barnard, at $3 per ton, $1.50."

The evidence tended to prove that before the sheriff's sale the officer divided all the hay in the plaintiff's barn that grew on the plaintiff's farm in 1857, except three tons; that the officer left three tons undivided and unsold, because he supposed Miner's half of three tons to be exempt from attachment; that the hay sold to Barnard was one half of the divided hay; that Barnard accepted the hay sold to him, and that the hay, taken and carried away by the defendant, was part of the hay attached, divided and sold to Barnard.

To show an acceptance by Barnard of the hay sold to him, the plaintiff offered in evidence the declarations of Barnard to the plaintiff, that the hay in one part of the barn belonged to him (Barnard), and that the hay in another part of the barn belonged to the plaintiff. The defendant objected to the admission of this evidence, but it was admitted.

Hatch *v.* Hart.

The court ruled, for the purposes of the trial, and instructed the jury, that Miner had such an interest in the hay raised on the plaintiff's farm in 1857, under the lease, as would sustain the defendant's plea; but that if the officer attached Miner's interest in the hay, and divided all the hay except three tons, separating and putting by itself a certain part as Miner's; and if the officer sold, with Miner's consent and in compliance with the statute, the hay so divided and set apart as Miner's, to Barnard, and if Barnard accepted the hay sold to him, and if the hay taken and carried away by the defendant was part of the hay so attached, divided, set apart, sold to and accepted by Barnard, then the defendant's plea was not supported, and the verdict should be for the plaintiff; and for error in this instruction, and in the admission of Barnard's said declarations, the defendant moved to set aside the verdict.

*Stone & Burrows*, for the plaintiff.

*Clark*, for the defendant.

FOWLER, J.   In *Moulton* v. *Robinson*, and *Ladd* v. *Robinson*, 27 N. H. 550, which were actions of trespass severally brought by the landlord and his tenant against an officer, for taking and carrying away hay cut upon a farm belonging to the landlord, while in the occupation of the tenant, under a lease which provided that all the crops should be equally divided between the landlord and tenant when harvested, except the hay, which was to be used equally on the farm, and the proceeds or gain of the stock to be divided when disposed of, it was holden that whenever, upon a lease of land, either for one crop, or one year, or for several years, the owner of the land is to receive a part of the productions of the land in lieu of rent, the contract operates and takes effect by way of reservation, and the share reserved is always the property of the owner of the

land, without severance or delivery, though both of them may be stipulated for; that where the reservation is of an entire crop to the landlord, there the entire property is always in him, and he alone can bring an action for any wrong done to the crops, the obligation of the tenant to cultivate and harvest them being really of the nature of a contract for services; that where the reservation is of an undivided share, the property of that share is always in the lessor by virtue of his reservation, while the property of the residue is always in the tenant by virtue of the implied grant of profits, and they are therefore tenants in common of the crop until a division, and upon the ordinary rules of law must join in an action for injuries to the joint property; but that, where the reservation is of the crops, or some part of them, to be used upon the land, the general property and right to them remains in the landlord, the tenant acquiring neither the ownership or right to sell the same, but, during the continuance of the lease, the possession remains common, because they have a common interest in the cultivation and application of them, the tenant agreeing to cultivate, harvest and use the crops for the common benefit of both; and that, as tenants in common, they must ordinarily bring their action jointly for any injury to crops thus reserved to be used for the common benefit.

These cases were very fully and carefully considered, and the doctrines we have quoted from the opinion of the court, abundantly supported as they are by the authorities cited to sustain them, must be regarded as the settled law of this State.

It is impossible to distinguish the facts in the present case from those in the cases to which we have referred, in point of principle, so far as relates to the right of property and ownership of the hay raised upon the plaintiff's farm. Here, as there, the hay was to be expended on the land for the joint benefit of the lessor and lessee; the

general property and right to them therefore remained exclusively in the plaintiff. While the tenant remained in the possession of the farm and of the hay, under the lease, he had a common interest in the application of the hay to the joint benefit, and in trespass for an injury done to it while this possession continued, as against a plea in abatement, must have been joined with the plaintiff.

But the case finds the evidence tended to show an abandonment of his possession of the farm and hay by the tenant, in December, prior to the taking of the hay in controversy in March, 1858, and that the tenant assented to a sale by the officer of his interest in the hay. If the tenant had abandoned his possession of the hay under the lease, or if he consented to relinquish his claim thereto, as he must have done by assenting to a sale thereof as his property by the officer, the general property and right to the possession being in the plaintiff, he might well maintain trespass alone for its subsequent removal. Whether the tenant had abandoned his possession of the hay in December, 1857, or not, his assent to its sale by the officer was a virtual relinquishment of all his right to the possession thereof under the lease, and thereafterwards the right to its possession vested in the plaintiff alone. The tenant had a right to hold the hay only for the purpose of applying it to the purposes designated in the lease ; he never had any such interest in it as would authorize him to sell it, or an officer to attach it upon a writ against him. His interest in the hay was a qualified one, and his right of possession incident to this qualified interest. When he undertook to claim the property in the hay, and relinquished his possession of it, the plaintiff's right of property therein gave him the right of exclusive possession thereafterwards.

The instructions to the jury were, therefore, sufficiently favorable to the defendant.

We are unable to perceive in what view the fact whether or not Barnard accepted the hay sold to him by the officer could have been material to the issue raised and tried between the parties upon the plea in abatement. The only material question under that issue would seem to have been, whether the tenant, Miner, had relinquished his possession of the hay under the lease, before it was taken by the defendant. Had it been material and competent to show Barnard's acceptance of the hay, it is difficult to see how it could have been more clearly and satisfactorily done than by proving his declarations and admissions directly to that effect. But we are of opinion that the entire evidence in relation to Barnard's acceptance of the hay was wholly immaterial, and therefore improperly admitted; yet, as we cannot discover how the defendant can have been prejudiced by its introduction, its improper admission furnishes no cause for setting aside the verdict. *Clement* v. *Brooks,* 13 N. H. 92; *Winkley* v. *Foye,* 28 N. H. 519; 33 N. H. 171.

With these views, the exceptions taken to the rulings and charge of the court must be overruled, and there must be

*Judgment upon the verdict.*